# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY (LEXINGTON)

| | |
|---|---|
| IN RE: <br>    EASTERN AIR FLOW, L.L.C. <br><br><br>                                    Debtor | CASE NO. 18-51740-grs <br><br> CHAPTER 7 <br><br> Judge Gregory R. Schaaf |

## MOTION FOR RELIEF FROM AUTOMATIC STAY AND ABANDONMENT

Now comes U.S. Bank National Association ("Movant"), and, through counsel, moves pursuant to 11 U.S.C.§ 362 for an Order granting the Motion for Relief from Automatic Stay and Abandonment with respect to certain property owned by the Debtor in which Movant has a security interest, and for an abandonment of the property under § 554 of the Bankruptcy Code. In support of this Motion, Movant states as follows:

1.  As of November 7, 2018 the Debtor was indebted to the Movant in the amount of $14,283.65, representing the balance due on the U.S. Bank Business Quick Loan Note and Security Agreement with Guaranty (For Loans Secured by Business Assets, Equipment, Vehicles, or Certificates of Deposit) ("Note").

2.  The indebtedness evidenced by the Note is secured by a security interest in the following property at **2014 Dodge Promaster 1500, VIN: 3C6TRVBG5EE100952**.

3.  As of November 7, 2018, the Debtor has not made payments to Movant in accordance with the Note secured by the Title Lien Statement. The Debtor has not made any

payments due for the months of July 25, 2018 through October 25, 2018.  If any payments come due and owing, they too shall be incurred.

Movant seeks relief from stay and abandonment on the following grounds:  the interest of Movant is not adequately protected; or the Debtor has no equity in the property.

    Respectfully submitted,

    /s/ David C Nalley
    _____
    David C Nalley (85637)
    Reisenfeld & Associates LLC
    Attorney for Movant
    3962 Red Bank Road
    Cincinnati, OH 45227
    voice: (513) 322-7000
    facsimile: (513) 322-7099
    e-mail: kybk@rslegal.com

## NOTICE

Please take notice that parties in interest shall have 14 days from the date of this motion within which to file a response to the motion and a request and notice of hearing on such response.  If no response is timely filed, the enclosed Order may be entered by the Court without a hearing on the motion.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all known lien holders have been served a copy of the foregoing has been served this ___20th___ day of ___December___, 2018, by regular U.S. Mail, postage prepaid, or by electronic filing upon the following:

      James D. Lyon, Bankruptcy Trustee
      jdlyonlaw@aol.com

      U.S. Trustee, U.S. Trustee
      ustpregion08.lx.ecf@usdoj.gov

      Matthew B Bunch, Debtor's Counsel
      matt@bunchlaw.com

and on the following by ordinary U.S. Mail addressed to:

      Eastern Air Flow, L.L.C., Debtor
      5721 KY Route 404
      David , KY 41616-8301

                                                /s/ David C Nalley
                                                David C Nalley (85637)

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Eastern Air Flow, L.L.C. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern District of Kentucky (State) |
| Case number | 18-51740-GRS |

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received**.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
U.S. Bank National Association
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**
U.S. Bank National Association Bankruptcy Department
Name
PO Box 5229
Number        Street
Cincinnati, Ohio 45201-5229
City        State        ZIP Code
Contact phone    877-254-7827
Contact email    rcclaims@usbank.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

**Where should payments to the creditor be sent?** (if different)
U.S. Bank National Association Payment Processing
Name
17650 NE Sandy Blvd
Number        Street
Portland, OR 97230
City        State        ZIP Code
Contact phone    877-254-7827
Contact email    rcclaims@usbank.com

**4. Does this claim amend one already filed?**
☒ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                                 **Proof of Claim**                                 Page 1
2005-N-5821

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 0516

**7. How much is the claim?** $14,176.81 .    **Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?** Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as healthcare information.

Goods Sold

**9. Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of Property:**
☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☑ Motor vehicle
☐ Other. Describe:    2014 DODGE RAM, 3C6TRVBG5EE100952

**Basis for Perfection:**    Recordation of Lien
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $
**Amount of the claim that is secured:** $14,176.81
**Amount of the claim that is unsecured:** $    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $1,085.08

**Annual Interest Rate** (when case was filed)    5.990000%
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property:

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No ☐ Yes. *Check one:* | | **Amount entitled to priority** |
|---|---|---|---|---|
| | | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ |
| | | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C.§ 507(a)(7). | | $ |
| | | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $ |
| | | * Amounts are subject to adjustment on 04/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/30/2018
                  MM / DD / YYYY

/s/ Jason A. Cottrill
          Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Jason A. Cottrill | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Authorized Agent for U.S. Bank National Association | | |
| Company | Bonial & Associates, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 9013 | | |
| | Number    Street | | |
| | Addison | Texas | 75001 |
| | City | State | ZIP Code |
| Contact phone | (972) 643-6600 | Email  POCInquiries@BonialPC.com | |

Official Form 410                              **Proof of Claim**                              Page 3
2005-N-5821

PROOF OF CLAIM - ADDENDUM  
Trustee: James D. Lyon  
POC_ExhAConsAC  
2005-N-5821

**IN THE UNITED STATES BANKRUPTCY COURT**  
**FOR THE EASTERN DISTRICT OF KENTUCKY**  
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 18-51740-GRS |
| EASTERN AIR FLOW, L.L.C. | § § § § § | CHAPTER 7  JUDGE GREGORY R. SCHAAF |

**EXHIBIT A**

ITEMIZATION OF CLAIM AND SUMMARY OF SUPPORTING  
DOCUMENTS FOR CLAIM OF U.S. BANK NATIONAL ASSOCIATION

REGARDING CERTAIN COLLATERAL DESCRIBED AS:  
2014 DODGE RAM 3C6TRVBG5EE100952

**SECTION 1. ITEMIZATION OF CLAIM**

A. <u>Total Debt as of September 21, 2018</u>

| | |
|---|---:|
| Principal Balance | $13,850.61 |
| Accrued Unpaid Interest | $238.66 |
| Late Charges | $87.54 |
| TOTAL DEBT | $14,176.81 |

B. <u>Total Arrearage as of September 21, 2018</u>

| | |
|---|---:|
| Regular Monthly Installments  July 25, 2018 through September 21, 2018 | $997.54 |
| Late Charges | $87.54 |
| TOTAL ARREARAGE | $1,085.08 |

Trustee: James D. Lyon

# us bank.

## U.S. BANK® BUSINESS QUICK LOAN
## NOTE AND SECURITY AGREEMENT WITH GUARANTY
(FOR LOANS SECURED BY BUSINESS ASSETS, EQUIPMENT, VEHICLES, OR CERTIFICATES OF DEPOSIT)

| U.S. Bank® Quick Loan | Borrower (Exact Legal Name) |
|---|---|
| Account Number: ▉▉▉ | EASTERN AIR FLOW LLC |
| Note Date: 12/19/2014 | 5721 KY ROUTE 404 |
| Credit Limit: $30,000.00 | DAVID, KY 416168301 |
| Tax ID Number: ▉▉▉ | |
| Advance Account: ▉▉▉ | Type of Organization: LIMITED LIABILITY COMPANY |
| Payment Account: ▉▉▉ | State of Registration: KY |
| | Date Current Owner Began: 10/09/2013 |
| Credit Limit not to exceed $250,000 | Gross Annual Sales: $150,000 |

1. **Loan ("Loan").** FOR VALUE RECEIVED, the undersigned borrower ("Borrower") promises to pay to the order of U.S. Bank National Association (the "Bank"), the principal sum of _____ $30,075.00 _____ (the "Loan Amount"), in accordance with the terms of this Business Loan Note and Security Agreement with Guaranty (this "Agreement").

   1.1 [✓] **SBA Guaranty.** If this box is checked, the additional terms set forth in this Section 1.1 and the SBA Addendum shall apply. The Loan evidenced by this Agreement is partially guaranteed by the U.S. Small Business Administration ("SBA"), information regarding which can be obtained from the SBA directly or at its website: www.sba.gov. Under this program, if this loan has been accepted by the SBA, the Bank will be repaid in part by the SBA upon a default under this Agreement; it is a condition to the making of this Loan that the SBA accept the Loan. In no event shall the interest rate, fees or other charges under this Agreement exceed the maximum rate or amounts permitted for the SBA loan program or any other maximum rates of interest imposed by applicable law. To the extent feasible, Borrower agrees that Borrower will purchase only American-made equipment and products with the proceeds of this Loan. The SBA Guaranty does not affect the liability of the borrower or any guarantor under this Agreement.

   1.2 **Interest.** The unpaid principal balance will bear interest at an annual rate of __5.99__ %.

   1.3 **Payment Schedule.** Principal and interest are payable in __71__ installments of __$498.77__ each, beginning on __January 25, 2015__, and on the same date of each consecutive month thereafter (except that if a given month does not have such a date, the last day of such month), plus a final payment equal to all unpaid principal and accrued interest on __December 25, 2020__, the maturity date.

   1.4 [✓] **Automatic Payments.** If this box is checked, then at all times that this Agreement is in effect, Borrower hereby authorizes the Bank to automatically deduct the amount of all payments required under this Agreement from:

   [✓] Borrower's business deposit account number ▉▉▉ held with Bank.
   [ ] Borrower's business deposit account held at _____ (Financial Institution) with
        Account Number _____ and Routing Number _____.

   This account is the "Payment Source Account." If there are insufficient funds in the Payment Source Account to pay the required payment, Borrower agrees to pay all fees on the Payment Source Account, which result from the automatic deductions, including any overdraft/NSF charges and any returned payment fee. If for any reason the Bank does not charge the Payment Source Account for payment, or if an automatic payment from the Payment Source Account is reversed, the payment is still due according to this Agreement. The number of withdrawals from the Payment Source Account may be limited, as set out in the customer agreement for that account. The Bank may cancel the automatic payment deduction from the Payment Source Account at any time in its discretion.

   1.5 [✓] **Prepayment.** This note may be prepaid at any time upon payment of all principal, interest, fees and expenses in connection with this Agreement. Prepayments of less than all the outstanding principal amount of this Agreement shall be applied upon principal payments in the inverse order of their maturities or in any order, which the Bank elects. Payments due shall be made in lawful money of the United States. If this note is prepaid in full within one year of the Note Date, Borrower agrees to pay the Bank a prepayment fee of 1% of original Loan amount, with a minimum fee of $50.00 and a maximum fee of $100.00.

   1.6 **Calculation of Interest and Maximum Rate.** Interest will be computed for the actual number of days principal is unpaid, using a daily factor obtained by dividing the stated interest rate by 360. In no event will the interest rate hereunder exceed that permitted by applicable law. If any interest or other charge is finally determined by a court of competent jurisdiction to exceed the maximum amount permitted by law, the interest or charge shall be reduced to the maximum permitted by law, and the Bank may credit any excess amount previously collected against the balance due or refund the amount to Borrower.

   1.7 [✓] **Fees.** If this box is checked, Borrower will pay the Bank the following fees:

   | Filing Public Official: | $0.00 | Origination: | $75.00 |
   |---|---|---|---|
   | VSI Insurance: | $0.00 | | |

1.8 Late Payment Fee. Subject to applicable law, if any payment is not made on or before its due date, the Bank may collect a delinquency charge of $15.00 or 5% of the delinquent amount, whichever is less; provided, however, that if any portion of the Loan evidenced by this Agreement has been guaranteed by the U.S. Small Business Administration, the late fee shall not exceed 5% of the delinquent amount. Collection of the late payment fee shall not be deemed to be a waiver of the Bank's right to declare a default hereunder.

1.9 Loan Purpose. Borrower represents that the proceeds of the Loan evidenced by this Agreement will be used for business purposes.

1.10 Advances and Paying Procedure. The Bank is authorized and directed to credit any of Borrower's accounts with the Bank (or to the account Borrower designates in writing) for all Loans made hereunder, and the Bank is authorized to debit such account or any other account of Borrower with the Bank for the amount of any principal, interest or expenses due under this Agreement or other amount due hereunder on the due date with respect thereto. Payments due under this Agreement and other Loan Documents will be made in lawful money of the United States. All payments may be applied by the Bank to principal, interest and other amounts due under the Loan documents in any order, which the Bank elects. If, upon any request by Borrower to the Bank to issue a wire transfer, there is an inconsistency between the name of the recipient of the wire and its identification number as specified by Borrower, the Bank may, without liability, transmit the payment via wire based solely upon the identification number.

1.11 Returned Payment Charge. For each payment made by Borrower to Lender that is returned or rejected (such as a check that is returned unpaid, or an automated transfer that is rejected), Borrower shall pay Lender a returned payment fee of $25.00.

1.12 Additional Terms.

2. Security Agreement. Borrower grants a security interest in the Collateral (defined below) to the Bank to secure all of Borrower's Obligations (defined below).

2.1 "Collateral" means all of the following whether now owned or existing or hereafter acquired by Borrower (or by Borrower with spouse) wherever located (including all documents, general intangibles, additions and accessions, spare and repair parts, special tools, replacements, returned or repossessed goods and books and records relating to the following and all proceeds and products of the following) [describe Collateral in the space provided below]:

| Year | Make | Model | VIN |
|---|---|---|---|
| 2014 | DODGE | RAM | 3C6TRVBG5EE100952 |

Other Collateral Information:

2.2 Possessory Pledge and Control Agreement. If the Collateral includes a deposit account or certificate of deposit (collectively, "Deposit Accounts") issued or maintained by U.S. Bank National Association or any of its affiliates as the depositary bank ("Depositary Bank"), the terms of this paragraph apply. The terms and conditions of this Agreement supplement, and are in addition to, any deposit account agreement and related agreements ("Deposit Agreements") that Borrower has with the Depositary Bank. The provisions of this Agreement shall supersede the provisions of the Deposit Agreements only to the extent the provisions herein are inconsistent with the Deposit Agreements, and in all other respects, the Deposit Agreements shall remain in full force and effect. The Borrower agrees to give the Bank control over the Deposit Accounts, meaning the Depositary Bank may comply with any and all orders, notices, requests and other instructions originated by the Bank directing disposition of the Deposit Accounts without any further consent from Borrower, even if such instructions are contrary to any of Borrower's instructions or demands or result in the Depositary Bank dishonoring items which may be presented for payment. The Borrower agrees that instructions from the Bank may include the giving of stop payment orders for any items presented to the Deposit Accounts, instructions to transfer funds to or for the benefit of the Bank or any other person or entity, and instructions to close the Deposit Account. By adopting the following symbols for purposes of authenticating this Agreement, the Depositary Bank specifically agrees to the control agreement terms set forth in this paragraph as well as acknowledges the terms of this Agreement.

/s/ U.S. Bank National Association, for itself and its successors and assigns

2.3 "Obligations" means all Borrower's debts, except consumer credit if Borrower is a natural person, liabilities, obligations, covenants, warranties, and duties to the Bank, whether now or hereafter existing or incurred, whether liquidated or unliquidated, whether absolute or contingent, whether arising out of this Agreement or otherwise, including any replacements, amendments, modifications, substitutions, and refinancings of such Obligations.

2.4 Other Definitions. The terms set forth in this Agreement shall have the meanings set forth in the Uniform Commercial Code as adopted in the state where the Bank's main office is located, unless otherwise defined herein.

2.5 Collateral Account. At Bank's discretion, the Bank may require that all proceeds of Collateral received by Borrower be deposited into a deposit account with the Bank in trust for the benefit of the Bank. Such proceeds shall not be commingled with any other funds or property of Borrower and shall be turned over to the Bank upon and in accordance with the Bank's instructions. All proceeds of Collateral received by the Bank directly or from Borrower will be applied against the Obligations in such order and at such times as determined by Bank.

3. Warranties/Covenants. Borrower continuously warrants and agrees as follows:

3.1 Borrower's Name, Location; Notice of Location Changes. Unless otherwise disclosed to the Bank in writing prior to the execution of this Agreement, Borrower's name and organizational structure has remained the same during the past five years. The Borrower will continue to use only the name set forth with Borrower's signature unless Borrower gives the Bank prior written notice of any change. Furthermore, Borrower shall not do business under another name nor use any trade name without giving 10 days prior written notice to the Bank. The Borrower will not change its status or organizational structure without the prior written consent of the Bank. The address appearing at the top of this Agreement is Borrower's chief executive office (or residence if Borrower is a sole proprietor).

3.2 Ownership; Maintenance of Collateral; Restrictions on Liens and Dispositions. The Borrower is the sole owner of the Collateral, which is free of all liens, claims, other encumbrances and security interests except as permitted in writing by the Bank. The Borrower shall: (i)

U.S. Bank Customer Confidential

Case 18-51740-grs    Claim 25-1 Filed 12/03/18    Desc Main Document    Page 7 of 14
Case 18-51740-grs    Doc 121-3 Filed 12/20/18 Entered 12/20/18 12:52:34    Page 7 of 14
Document    Page 10 of 17

maintain the Collateral in good condition and repair (reasonable wear and tear excepted), and not permit its value to be impaired; (ii) not permit waste, removal or loss of identity of the Collateral; (iii) keep the Collateral free from all liens, executions, attachments, claims, encumbrances and security interests (other than the Bank's paramount security interest and those permitted in writing by the Bank); (iv) defend the Collateral against all claims and legal proceedings by persons other than the Bank; (v) pay and discharge when due all taxes, levies and other charges or fees upon the Collateral except for payment of taxes contested by Borrower in good faith by appropriate proceedings so long as no levy or lien has been imposed upon the Collateral; (vi) not lease, sell or transfer the Collateral to any party nor move it to any new location outside of the ordinary course of business; (vii) not permit the Collateral, without the consent of the Bank, to become a fixture or an accession to other goods; and (viii) not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance.

3.3 Maintenance of Security Interest; Purchase Money Security Interests. The Borrower shall take any action requested by the Bank to preserve the Collateral and to establish the value and the priority of, to perfect, to continue the perfection of or to enforce the Bank's interest in the Collateral and the Bank's rights under this Agreement; and shall pay all costs and expenses related thereto. The Borrower hereby authorizes the Bank to take any and all actions described above and in place of Borrower with respect to the Collateral and hereby ratifies any such actions the Bank has taken prior to the date of this Agreement and hereafter, which actions may include, without limitation, filing UCC financing statements and obtaining or attempting to obtain control agreements from holders of the Collateral. The Borrower and the Bank intend to maintain the full effect of any purchase money security interest granted in favor of the Bank notwithstanding the fact that the Collateral so purchased is also pledged as security for other Obligations under this Agreement.

3.4 Collateral Inspections; Modifications and Changes in Collateral. At reasonable times, the Bank may examine the Collateral and Borrower's records pertaining to it, wherever located, and make copies of such records at Borrower's expense; and Borrower shall assist the Bank in so doing. Without the Bank's prior written consent, Borrower shall not alter or modify any Collateral, except for alterations to equipment, which do not materially affect its value. The Borrower shall promptly notify the Bank in writing of any material change in the condition of the Collateral and of any change in location of the Collateral.

3.5 Insurance. The Borrower will maintain insurance to such extent, covering such risks and with such insurers as is usual and customary for businesses operating similar properties, and as is satisfactory to the Bank, including insurance for fire and other risks insured against by extended or comprehensive coverage, public liability insurance and workers' compensation insurance; and will designate the Bank as loss payee with a "Lender's Loss Payable" endorsement on any casualty policies and take such other action as the Bank may reasonably request to ensure that the Bank will receive (subject to no other interests) the proceeds of any insurance covering the Collateral. The Borrower hereby assigns all insurance proceeds and irrevocably directs, while any Obligations remain unpaid, any insurer to pay to the Bank the proceeds of all such insurance and any premium refund; and authorizes the Bank to endorse Borrower's name to effect the same, to make, adjust or settle, in Borrower's name, any claim on any insurance policy relating to the Collateral; and at the option of the Bank, to apply such proceeds and refunds to the Obligations or to restoration of the Collateral, returning any excess to Borrower. In the event of any failure of Borrower to obtain or maintain any insurance required hereunder, the Bank shall have the authority, but not the obligation, to obtain any such insurance coverage, and Borrower shall immediately reimburse the Bank for the cost thereof, together with interest on such amount at the highest rate of interest then accruing on any of the Obligations.

3.6 Financial Information. The Borrower will (i) maintain accounting records in accordance with generally recognized and accepted principles of accounting consistently applied throughout the accounting periods involved; (ii) provide the Bank with such information concerning its business affairs and financial condition (including insurance coverage) as the Bank may reasonably request; and (iii) without request, provide the Bank with annual financial statements prepared by an accounting firm acceptable to the Bank within 120 days of the end of each fiscal year.

3.7 Guaranties. If Borrower is not a sole proprietor, then all amounts Borrower now or later owes to Lender shall be guaranteed by certain "Guarantors". These Guarantors include each shareholder, partner and member owning 25% or more (20% or more for SBA loans) of the ownership interests in Borrower. Lender may also require other Guarantors. For purposes of calculating percentages of ownership, each married household shall be considered to constitute one owner. The failure of any such person to sign a guaranty or its equivalent shall not impair the obligation of Borrower or any other Guarantor to pay all amounts owing from time to time under the Loans.

3.8 Credit Balances; Security Interest; Setoff. As additional security for the payment of the Loan or any document securing or related to the Loan (collectively the "Loan Documents") and any other Obligation, Borrower hereby grants to the Bank a security interest in, a lien on and an express contractual right to set off against all depository account balances, cash and any other property of Borrower now or hereafter in the possession of the Bank and the right to refuse to allow withdrawals from any account (collectively "Setoff"). The Bank may, at any time upon the occurrence of a default hereunder (notwithstanding any notice requirements or grace/cure periods under this or other agreements between Borrower and the Bank) Setoff against the Obligations whether or not the Obligations (including future installments) are then due or have been accelerated, all without any advance or contemporaneous notice or demand of any kind to Borrower, such notice and demand being expressly waived.

4. Default. Notwithstanding any cure periods described below, Borrower shall immediately notify the Bank in writing when Borrower obtains knowledge of the occurrence of any event of default specified below. Regardless of whether Borrower has given the required notice, the occurrence of one or more of the following shall constitute a default:

4.1 Nonpayment. The Borrower shall fail to pay (i) any interest due or any fees, charges, costs or expenses under this Agreement by five (5) days after the same becomes due; or (ii) any principal amount of this Agreement when due.

4.2 Nonperformance. The Borrower or any Guarantor of Borrower's Obligations to the Bank ("Guarantor") shall fail to perform or observe any agreement, term, provision, condition, or covenant (other than a default occurring under 4.1, 4.3, 4.4, 4.5, 4.6, 4.7 or 4.8 of this paragraph 4) required to be performed or observed by Borrower or any Guarantor hereunder or under any other agreement with or in favor of the Bank.

4.3 Misrepresentation. Any financial information, statement, certificate, representation or warranty given to the Bank by Borrower or any Guarantor (or any of their representatives) in connection with entering into this Agreement and/or borrowing hereunder, or required to be

U.S. Bank
Customer Confidential

furnished under the terms hereof, shall prove untrue or misleading in any material respect (as determined by the Bank in the exercise of its judgment) as of the time when given.

4.4 **Default on Other Obligations.** The Borrower or any Guarantor shall be in default under the terms of any loan agreement, promissory note, lease, conditional sale contract or other agreements, document or instrument evidencing, governing or severing any indebtedness owing by Borrower or any Guarantor to the Bank or any indebtedness in excess of $10,000 owing by Borrower to any third party, and the period of grace, if any, to cure said default shall have passed.

4.5 **Judgments.** Any judgment shall be obtained against Borrower or any Guarantor which, together with all other outstanding unsatisfied judgments against Borrower (or such Guarantor), shall exceed the sum of $10,000 and shall remain unvacated, unbonded or unstayed for a period of thirty (30) days following the date of entry thereof.

4.6 **Inability to Perform; Bankruptcy/Insolvency.** (i) The Borrower or any Guarantor shall die or cease to exist, or (ii) any Guarantor shall attempt to revoke any guaranty of the Obligations described herein, or any guaranty becomes unenforceable in whole or in part for any reason; or (iii) any bankruptcy, insolvency or receivership proceedings, or an assignment for the benefit of creditors, shall be commenced under any Federal or state law by or against Borrower or any Guarantor; or (iv) Borrower or any Guarantor shall become the subject of any out-of-court settlement with its creditors; or (v) Borrower or any Guarantor is unable or admits in writing its inability to pay its debts as they mature.

4.7 **Adverse Change; Insecurity.** (i) There is a material adverse change in the business, properties, financial condition or affairs of Borrower or any Guarantor, or in any Collateral securing the Obligations; or (ii) the Bank in good faith deems itself insecure.

4.8 **SBA Related Defaults.** If Section 1.1 of this Agreement has been checked, so as to indicate that a portion of the Loan is to be guaranteed by the SBA, the SBA shall fail to guarantee at least 50% of the indebtedness evidenced by this Agreement, or shall cancel or otherwise limit its guarantee or give the Bank notice of its intention to do so.

5. **Termination of Loans; Additional Bank Rights.** Upon the occurrence of any of the events identified in paragraph 4, the Bank may at any time (notwithstanding any notice requirements, or grace/cure periods under this or other agreements between Borrower and the Bank) (i) immediately terminate its obligation, if any, to make additional loans to Borrower; (ii) set off against all depository account balances, cash and any other property now or hereafter in the possession of the Bank; and/or (iii) take such other steps to protect or preserve the Bank's interest in any collateral, including without limitation, advancing funds to protect any Collateral and insuring Collateral at Borrower's expense; all without demand or notice of any kind, all of which are hereby waived.

6. **Acceleration of Obligations.** Upon the occurrence of any of the events identified in paragraphs 4.1 through 4.5, 4.7 and 4.8 and the passage of any applicable cure periods, the Bank may at any time thereafter, by written notice to Borrower, declare the unpaid principal balance of any Obligations, together with the interest accrued thereon and other amounts accrued hereunder, to be immediately due and payable; and the unpaid balance shall thereupon be due and payable, all without presentation, demand, protest or further notice of any kind, all of which are hereby waived, and notwithstanding anything to the contrary contained herein. Upon the occurrence of any event under paragraph 4.6, the unpaid principal balance of any Obligations, together with all interest accrued thereon and other amounts accrued hereunder, shall thereupon be immediately due and payable, all without presentation, demand, protest or notice of any kind, all of which are hereby waived, and notwithstanding anything to the contrary contained herein.

7. **Cumulative Remedies; Notice; Waiver.** The Bank may enforce its rights and remedies under this Agreement upon default. In addition to the remedies for default set forth in this Agreement, the Bank upon default shall have all other rights and remedies for default provided by the Uniform Commercial Code, as well as any other applicable law and this Agreement, INCLUDING, WITHOUT LIMITATION, THE RIGHT TO REPOSSESS, RENDER UNUSABLE AND/OR DISPOSE OF THE COLLATERAL WITHOUT JUDICIAL PROCESS. The rights and remedies specified herein are cumulative and are not exclusive of any rights or remedies, which the Bank would otherwise have. With respect to such rights and remedies:

7.1 **Assembling Collateral; Storage; Use of Borrowers' Name/Other Property.** The Bank may require Borrower to assemble the Collateral and to make it available to the Bank at any convenient place designated by the Bank. The Borrower recognizes that the Bank will not have an adequate remedy in Law if this obligation is breached and accordingly, Borrower's obligation to assemble the Collateral shall be specifically enforceable. The Bank shall have the right to take immediate possession of the Collateral, and Borrower irrevocably authorizes the Bank to enter any of the premises wherever any Collateral shall be located, and to store, repair, maintain, assemble, manufacture, advertise and sell, lease or dispose of (by public sale or otherwise) the same on said premises until sold, all without charge or rent to the Bank. Further, Borrower releases the Bank from obtaining a bond or surety with respect to any repossession and/or disposition of the Collateral.

7.2 **Notice of Disposition.** Written notice, when required by law, sent to any address of Borrower in this Agreement, at least five (5) calendar days (counting the day of sending) before the date of a proposed disposition of the Collateral is reasonable notice, but less notice may be reasonable under the circumstances.

7.3 **Possession of Collateral/Commercial Reasonableness.** The Bank shall not, at any time, be obligated to either take or retain possession or control of the Collateral. With respect to Collateral in the possession or control of the Bank, Borrower and the Bank agree that as a standard for determining commercial reasonableness, the Bank need not liquidate, collect, sell or otherwise dispose of any of the Collateral if the Bank believes, in good faith, that disposition of the Collateral would not be commercially reasonable, would subject the Bank to third-party claims or liability, that other potential purchasers could be attracted or that a better price could be obtained if the Bank held the Collateral for up to 2 years. The Bank may sell Collateral without giving any warranties and may specifically disclaim any warranties of title or the like. Furthermore, the Bank may sell the Collateral on credit (and reduce the Obligations only when payment is received from the buyer), at wholesale and/or with or without an agent or broker; and the Bank need not complete, process, repair, clean-up or otherwise prepare the Collateral prior to disposition.

U.S. Bank
Customer Confidential

Case 18-51740-grs    Claim 25-1 Filed 12/03/18    Desc Main Document    Page 9 of 14
Case 18-51740-grs    Claim 5-1 Filed 12/03/18 Entered 12/03/18 12:52:34    Page 9 of 14
Document    Page 12 of 17

If the purchaser fails to pay for the Collateral, the Bank may resell the Collateral and Borrower shall be credited with the cash proceeds of the sale. The Bank may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

7.4 Waiver by the Bank. The Bank may permit Borrower to attempt to remedy any default without waiving its rights and remedies hereunder, and the Bank may waive any default without waiving any other subsequent or prior default by Borrower. Furthermore, delay on the part of the Bank in exercising any right, power or privilege hereunder or at law shall not operate as a waiver thereof, nor shall any single or partial exercise of such right, power or privilege preclude other exercise thereof or the exercise of any other right, power or privilege. No waiver or suspension shall be deemed to have occurred unless the Bank has expressly agreed in writing specifying such waiver or suspension.

8. Waivers; Relationship to Other Documents. All Borrowers, endorsers, sureties and guarantors waive presentment, protest, demand, and notice of dishonor. The warranties, covenants and other obligations of Borrower (and the rights and remedies of the Bank) in this Agreement and all related documents are intended to be cumulative and to supplement each other.

9. Expenses and Attorneys' Fees. The Borrower will reimburse the Bank and any participant in the Obligations ("Participant") for all attorneys' fees and all other costs, fees and out-of-pocket disbursements incurred by the Bank or any Participant in connection with the preparation, execution, delivery, administration, defense and enforcement of this Agreement, including fees and costs related to any waivers or amendments with respect thereto (examples of costs and fees included but are not limited to fees and costs for: filing, perfecting or confirming the priority of the Bank's lien, title searches or insurance, appraisals and other reviews related to Borrower, any collateral or the loans, if requested by the Bank). The Borrower will also reimburse the Bank and any Participant for all costs of collection before and after judgment, and the costs of preservation and/or liquidation of any collateral.

10. Applicable Law; Interpretation; Joint Liability. This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Ohio, except to the extent superseded by Federal law. THE BORROWER HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITUATED IN THE COUNTY OR FEDERAL JURISDICTION OF THE BANK'S BRANCH WHERE THE LOAN WAS ORIGINATED, AND WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS, WITH REGARD TO ANY ACTIONS, CLAIMS, DISPUTES OR PROCEEDINGS RELATING TO THIS NOTE, THE COLLATERAL, ANY OTHER LOAN DOCUMENT, OR ANY TRANSACTIONS ARISING THEREFROM, OR ENFORCEMENT AND/OR INTERPRETATION OF ANY OF THE FOREGOING. Invalidity of any provisions of this Agreement shall not affect any other provision. Nothing herein shall affect the Bank's rights to serve process in any manner permitted by law, or limit the Bank's right to bring proceedings against Borrower in the competent courts of any other jurisdiction or jurisdictions. This Agreement, and any amendment hereto (regardless of when executed) will be deemed effective and accepted only upon the Bank's receipt of the executed originals thereof. If there is more than one Borrower, the liability of Borrowers shall be joint and several, and the reference to "Borrower" shall be deemed to refer to all Borrowers.

11. Participations/Guarantors/Successors. The Bank may, at its option, sell all or any interests in this Agreement to other financial institutions (the "Participant"), and in connection with such sales (and thereafter) disclose any financial information the Bank may have concerning Borrower to any such Participant or potential Participant. From time to time, the Bank may, in its discretion and without obligation to Borrower, any Guarantor or any other third party, disclose information about Borrower and this Loan to any Guarantor, surety or other accommodation party. This provision does not obligate the Bank to supply any information or release Borrower from its obligation to provide such information, and Borrower agrees to keep all Guarantors advised of its financial condition and other matters which may be relevant to the Guarantors' obligations to the Bank. The rights, options, powers and remedies granted in this Agreement will extend to the Bank and to its successors and assigns, will be binding upon Borrower and its successors and assigns and will be applicable hereto and to all renewals and/or extensions hereof.

12. Copies; Entire Agreement; Modification. The Borrower hereby acknowledges the receipt of a copy of this Agreement. IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING AND EXPRESSING CONSIDERATION ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. THE TERMS OF THIS AGREEMENT MAY ONLY BE CHANGED BY ANOTHER WRITTEN AGREEMENT. THIS NOTICE SHALL ALSO BE EFFECTIVE WITH RESPECT TO ALL OTHER CREDIT AGREEMENTS NOW IN EFFECT BETWEEN BORROWER AND THE BANK. A MODIFICATION OF ANY OTHER CREDIT AGREEMENTS NOW IN EFFECT BETWEEN BORROWER AND THE BANK, WHICH OCCURS AFTER RECEIPT BY BORROWER OF THIS NOTICE, MAY BE MADE ONLY BY ANOTHER WRITTEN INSTRUMENT. ORAL OR IMPLIED MODIFICATIONS TO SUCH CREDIT AGREEMENTS ARE NOT ENFORCEABLE AND SHOULD NOT BE RELIED UPON.

13. Waiver of Jury Trial. TO THE EXTENT PERMITTED BY LAW, BORROWER AND BANK HEREBY JOINTLY AND SEVERALLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO ANY OF THE LOAN DOCUMENTS, THE OBLIGATIONS THEREUNDER, ANY COLLATERAL SECURING THE OBLIGATIONS, OR ANY TRANSACTION ARISING THEREFROM OR CONNECTED THERETO. BORROWER AND BANK EACH REPRESENTS TO THE OTHER THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

14. Attachments. All documents attached hereto, including any appendices, schedules, riders, and exhibits to this Business Loan Note and Security Agreement with Guaranty, are hereby expressly incorporated by reference.

15. Payment Protection. The U.S. Bank Payment Protection Plan (the "Plan") is an optional provision of your Loan, as described in the Payment Protection Plan Addendum. Your decision whether or not to purchase this protection will not affect your application for credit or the terms of any existing credit agreement you have with U.S. Bank. There are eligibility requirements, conditions and exclusions which apply to each type of protection and that may prevent you from obtaining protection under the Plan. These are fully explained in the U.S. Bank Payment Protection Plan Addendum which amends the Loan. If you are not completely satisfied, you may cancel the Plan within 30 days and we will refund any Debt Cancellation Fee paid by crediting your Loan. Additionally, you may cancel at any time by notifying us in writing and receive a refund of unearned fees (if any).

U.S. Bank
Customer Confidential

## IMPORTANT INFORMATION

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT: To help the government fight the funding of terrorism and money laundering activities, federal law requires financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CELLULAR PHONE CONTACT POLICY: By providing U.S. Bank with a telephone number for a cellular phone or other wireless device, each Signer expressly consents to receiving communications - including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system - from U.S. Bank (including its affiliates and agents) at that number. This express consent applies to each such telephone number provided to U.S. Bank now or in the future, and permits such calls regardless of their purpose. Calls and messages may incur access fees from a cellular provider.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your personal credit report

MISSOURI NOTICE: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS AGREEMENT, ANY GUARANTY AND ANY OTHER RELATED DOCUMENT WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

WASHINGTON NOTICE: UNDER WASHINGTON LAW, ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE.

NEBRASKA NOTICE: A CREDIT AGREEMENT MUST BE IN WRITING TO BE ENFORCEABLE UNDER NEBRASKA LAW. TO PROTECT BORROWER AND LENDER FROM MISUNDERSTANDINGS OR DISAPPOINTMENTS, ANY CONTRACT, PROMISE, UNDER TAKING OR OFFER TO FORBEAR REPAYMENT OF MONEY OR TO MAKE ANY OTHER FINANCIAL ACCOMMODATION IN CONNECTION WITH THIS LOAN OF MONEY OR GRANT OR EXTENSION OF CREDIT, OR ANY AMENDMENT OF, CANCELLATION OF, WAIVER OF, OR SUBSTITUTION FOR ANY OR ALL OF THE TERMS OR PROVISIONS OF ANY INSTRUMENT OR DOCUMENT EXECUTED IN CONNECTION WITH THIS LOAN OR MONEY OR GRANT OR EXTENSION OF CREDIT MUST BE IN WRITING TO BE EFFECTIVE.

OREGON NOTICE: UNDER OREGON LAW, MOST AGREEMENTS, PROMISES, AND COMMITMENTS MADE BY LENDERS AFTER OCTOBER 3, 1989, CONCERNING LOANS AND OTHER CREDIT EXTENSIONS THAT ARE NOT FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES, OR SECURED SOLELY BY THE BORROWER'S RESIDENCE, MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY THE LENDER TO BE ENFORCEABLE.

## PERSONAL GUARANTY

**Guaranty.** For value received, and to induce the Bank to extend or continue credit to Borrower, the undersigned GUARANTOR ("Guarantor," whether one or more) HEREBY UNCONDITIONALLY AND IRREVOCABLY GUARANTEES PAYMENT OF AND PROMISES TO PAY TO THE BANK THE OBLIGATIONS, whether or not the Obligations are valid and enforceable against Borrower, whenever they become due, whether on demand, at maturity or by reason of acceleration, or at the time the Guarantor shall die or become the subject of any bankruptcy, insolvency or incompetency proceeding. In addition to the Obligations under the above Agreement, for purposes of this Guaranty, the term "Obligations" shall also include all interest, costs and attorneys fees (including fees of inside counsel) incurred by the Bank in attempting to realize upon any collateral securing this Guaranty, or to enforce this Guaranty. The Guarantor agrees that the Bank does not have to take any steps whatsoever to realize upon the Collateral, or proceed against Borrower or any other party before or after proceeding against the Guarantor, and the Guarantor waives any claim of marshalling of assets. The Guarantor also agrees the Bank may renew, amend, modify or extend any existing or future Obligations (including making additional advances, or changing the amount, time or manner of payment of any Obligations), waive compliance with any provisions or documents evidencing any of the Obligations or settle, release, compromise or subordinate any Obligation, any Collateral, any collateral securing this Guaranty, or the liability of any other party responsible for payment of the Obligations. The Guarantor expressly waives all right of setoff and counterclaims, as well as diligence in collection or prosecution, presentment, demand of payment or performance, protest, notice of dishonor, nonpayment or nonperformance of any Obligation. The Guarantor warrants and represents to the Bank that the Guarantor has and will examine the financial condition of Borrower as the Guarantor deems necessary; and specifically relieves the Bank of any duty or responsibility to advise the Guarantor of any change in Borrower's financial condition. The Guarantor grants to the Bank a security interest in all Guarantor's depository account balances, cash and any other property now or hereafter in the possession of or under the control of the Bank to secure payment under this Guaranty and grants the Bank a contractual right to setoff, without notice or demand, amounts due hereunder against all depository account balances, cash and other property now or hereafter in the possession of the Bank. If this Guaranty has been signed by more than one Guarantor, the obligations of each Guarantor shall be joint and several with all other Guarantors.

**Kentucky Guarantors.** The provisions of this paragraph apply to any Guarantor who resides in the State of Kentucky. Notwithstanding the provisions of this Guaranty, the maximum aggregate liability of the Guarantor under this Guaranty shall not exceed $30,000.00 ("Guarantied Principal"); plus any and all interest accruing on the Guarantied Principal and all fees, charges and costs of collecting the Guarantied Principal or otherwise enforcing the Bank's rights under this Guaranty, including without limitation, reasonable attorneys' fees and expenses (all of the foregoing hereafter referred to as "Guarantied Obligations"). This Guaranty shall remain in full force and effect until, and shall terminate (as used in Kentucky Revised Statutes §371.065, as amended) on the earlier of (a) the day following the date of payment in full upon maturity of the Guarantied Obligations; or (b) _____N/A_____, 20___; provided, however, that the termination of this Guaranty on such termination date shall not affect in any manner the liability of the Guarantor with respect to (1) the Guarantied Obligations which are created or incurred prior to such termination date ("Prior Obligations"), or (2) extension or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, such Prior Obligations prior to, on or after such termination date.

**Third Party Pledge.** For value received, and to induce Bank to extend credit or other financial accommodations now or in the future to Borrower, the Guarantor agrees to pledge any interest Guarantor has or may acquire in the Collateral to secure the Obligations.

The Guarantor and the Bank hereby jointly and severally waive any and all rights to trial by jury in any action or proceeding relating to this Guaranty and the Obligations hereunder; and each represent to the other that this waiver is knowingly, willingly and voluntarily given.

U.S. Bank
Customer Confidential

## COMMUNITY PROPERTY CONSENT
*(Applies to guarantors residing in community property states, such as Arizona, California, Idaho, Nevada, Washington, and Wisconsin)*

PURPOSE AND CONSENT. Each Guarantor who is married represents that this obligation is incurred in the interest of his or her marriage or family. The spouse of each Guarantor who has not signed above as a Guarantor consents to the Guarantor entering into this Guaranty, but said spouse of each Guarantor is not a party to the above Guaranty.

Signatures Required

| Guarantor | Guarantor's Spouse |
|---|---|
| Date | Date |
| Guarantor | Guarantor's Spouse |
| Date | Date |
| Guarantor | Guarantor's Spouse |
| Date | Date |
| Guarantor | Guarantor's Spouse |
| Date | Date |
| Guarantor | Guarantor's Spouse |
| Date | Date |

046 Form ACAP QLNTEUSBR01 08/2013

U.S. Bank Customer Confidential

## SIGNATURES

By signing this Agreement, each person ("Signer"), individually and on behalf of Borrower, requests the indicated services or credit products from Lender. Each Signer is authorized to sign on behalf of Borrower and will provide business resolutions to Lender upon request. Each Signer has read and agrees to all applicable provisions, including the personal guaranty and grant of a security interest in deposit accounts. Each Signer authorizes Lender to (1) obtain credit records and other credit and employment information about the Signers personally and the Borrower (now and in the future), including from state and federal tax authorities, for deciding whether to approve the requested credit and for later periodic account review and collection purposes, and (2) furnish information about the Borrower and the Guarantors to credit bureaus, other Signers, and other persons who claim to be authorized by Borrower or the Guarantors to receive such information. Borrower and each Signer guaranty that all information in this Agreement is correct and agree to notify Lender if any information changes. All loans shall be used for business purposes only.

BY SIGNING BELOW, EACH SIGNER AGREES TO BE PERSONALLY RESPONSIBLE FOR ANY CREDIT GRANTED PURSUANT TO THIS AGREEMENT. This Agreement constitutes a Guaranty under which each individual signing is a Guarantor, and individually guarantees the payment of all present and future obligations of Borrower to Lender in accordance with the provisions in this Agreement.

IMPORTANT NOTICE: EACH BUSINESS OWNER MUST VERIFY THE INFORMATION BELOW AND SIGN ON BEHALF OF THE BUSINESS AND AS A PERSONAL GUARANTOR.

Personal Guarantor(s) Information:
JUSTIN T TROUT
5721 KY ROUTE 404
DAVID, KY 416168301
Percent of Ownership: 100

| Signature of Business Owner & Guarantor | Date | Printed Name | Title |
|---|---|---|---|
| [signed] | 12-19-14 | JUSTIN T TROUT | MANAG |
| | | | |
| | | | |
| | | | |
| | | | |

U.S. Bank
Customer Confidential

# KENTUCKY TRANSPORTATION CABINET
## Division of Motor Vehicle Licensing

JCCO
TC 96-187
01/2001

## TITLE LIEN STATEMENT    TITLE #: _____

| ☐ ORIGINAL FILING | ☐ CONTINUATION | ☐ TERMINATION |
|---|---|---|
|  | Original File # _____ <br> Original File Date _____ | Original File # _____ <br> Original File Date _____ |
| **1. Debtor(s) (Last Name First) and Address(es)** <br><br> EASTERN AIRFLOW LLC <br><br> 5721 ROUTE 404 <br> DAVID KY 41616 | **2. Secured Party and Address** <br><br> US Bank NA <br> PO Box 3427 <br> Oshkosh WI 54903 | **For Filing Officer** (Date, Time, Number and Filing Officer) <br><br> FILE: 150371 <br> DATE: 2/3/15 <br> TIME: 8:40 am dlb $22.00 <br> FLOYD COUNTY CLERK'S OFFICE <br> PO BOX 1089 <br> PRESTONSBURG KY 41653 |

**4. This Title Lien Statement covers the following:**

| YEAR MODEL | MAKE | VEHICLE IDENTIFICATION NUMBER | ADDITIONAL DESCRIPTION |
|---|---|---|---|
| 2014 | PROMASTER 1500M | 3C6TRVBG5EE100952 |  |

_[signature: Justin]_

Authentication of Debtor(s)

12/20/2014
Date

Authentication of Debtor(s)

12/20/2014
Date

WHITE - FILING OFFICER
YELLOW - LIENHOLDER ACKNOWLEDGEMENT
PINK - DEALER/SECURED PARTY
GOLDENROD - DEBTOR

VOLUFORMS® 28103000  3/11